UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETE J. MANGER,<br><br>    Plaintiff,<br><br>    v.<br><br>LEAPFROG ENTERPRISES, INC., et al.,<br><br>    Defendants. | Case No. 16-cv-01161-WHO<br><br>**ORDER GRANTING MOTON TO DISMISS**<br><br>Re: Dkt. No. 29 |

In this shareholder derivative lawsuit, plaintiff alleges that defendant Leapfrog Enterprises, Inc. (Leapfrog) and seven of its former Board of Directors members[1] violated three provisions of the Securities and Exchange Act of 1934 by issuing a false and misleading Recommendation Statement, recommending that shareholders of Leapfrog tender their shares pursuant to a Tender Offer from VTech. Defendants move to dismiss, arguing that plaintiff's Amended Complaint fails to state a claim under Section 14(e) of the Exchange Act because Manger fails to allege with the required specificity which statements in the Recommendation Statement were false or misleading and why, fails to allege facts showing scienter, and fails to allege facts showing loss causation. Defendants also move to dismiss the claim under Section 14(d)(4) because there is no private right of action under that section, and the claim under 20(a) because there is no liability under any other section of the Exchange Act. I agree with defendants. The Section 14(e) and 20(a) claims are DISMISSED with leave to amend and the Section 14(d)(4) claim is DISMISSED without leave to amend.

---

[1] The individual defendants are John Barbour (former Chief Executive Officer), William B. Chiasson (former Chairman of the Board), Thomas J. Kalinske (former Vice-Chairman of the Board), E. Stanton Mckee, Jr. (former Chairman of the Audit Committee), Randy O. Rissman (former Chair of the Compensation Committee), Caden Wang (former member of the Audit and Nominating and Corporate Government Committees), and Stephen M. Youngwood (member of the Audit Committee).

**BACKGROUND**

In February 2016, Leapfrog, VTech, and VTech's wholly owned subsidiary Bonita Merger Sub, LLC entered into an agreement and plan of merger (Merger Agreement). Pursuant to the terms of the Merger Agreement, VTech made a Tender Offer on March 3, 2016 (expiring April 1, 2016), whereby each LeapFrog share would be cashed out for $1.00. Amended Complaint (AC) ¶ 3. In between the announcement of the Merger Agreement and the Tender Offer, LeapFrog disclosed the success of a new product line – the EPIC tablet – and noted in its February 9, 2016 10-Q, that EPIC became the "#1 kid's tablet" in that time period and it accounted for a significant percentage of the company's sales (between 10% and 18%) during the quarter. AC ¶ 7; Declaration of James M. Wilson, Ex. 1 (3rd Quarter 10-Q) at 23.

On March 3, 2016, Leapfrog filed a Schedule 14D-9 Solicitation/Recommendation Statement with the Securities and Exchange Commission and disseminated it to its shareholders. The Recommendation Statement recommended that shareholders agree to the $1.00 a share Tender Offer. Defendants' basis and rationale was the company's "dire" financial straits and impending lack of liquidity. AC ¶¶ 92, 97. Plaintiff alleges that these characterizations of "dire" financial straits and the Statement's focus on failing products (LeapTV) were misleading because defendants failed to disclose to shareholders in the Recommendation Statement that the EPIC tablet was forecasted to bring in substantial sales and success. AC ¶¶ 7-9. Plaintiff alleges that defendants also failed to conduct "typical valuation analyses" in order to determine whether the Merger Consideration was fair, and failed to secure a proper evaluation of liquidation or asset sale alternatives (other than relying on unqualified evaluations of those options by LeapFrog's banker Morgan Stanley & Co. LLC). AC ¶¶ 9-11, 101-102. Plaintiff also asserts that shareholders' damages are demonstrated in part by the fact that defendants rejected a competing offer of $1.10 a share, made by large toy maker MGA, shortly after the Merger Agreement was announced. In sum, plaintiff argues that defendants "affirmatively created an impression of a state of affairs that differed materially from one that actually existed." Oppo. at 2; AC ¶¶ 70-71.

In early April 2016, 56% of outstanding shares were tendered, just enough to effectuate the merger. All Leapfrog shareholders were cashed out of their shares at $1.00 per share. AC ¶¶ 3,4.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, in this case, with omissions-based claims asserted under Section 14(e) of the Exchange Act, the heightened pleading requirement of Rule 9(b) applies. *See, e.g., Deutsch v. Flannery*, 823 F.2d 1361, 1362 (9th Cir. 1987) (applying Rule 9(b) to 14(e) claim that tender offer solicitation "failed to disclose" material information).[2]

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

---

[2] Plaintiff argues that Rule 9(b) does not apply to claims under 14(e), because *Deutsch v. Flannery*, 823 F.2d 1361 (9th Cir. 1987) considered both 10(b) and 14(e) claims and applied the 9(b) standard without separately explaining why it was appropriate with respect to the 14(e) claim. Oppo. at 4, n.5. In *Deutsch*, the Ninth Circuit expressly acknowledged the 14(e) claim and nonetheless applied 9(b)'s heightened pleading standard. I will follow suit.

1  undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport*
2  *Package Express*, 885 F.2d 531, 538 (9th Cir.1989).

## DISCUSSION

**I.   SECTION 14(E) CLAIM**

Section 14(e) of the Exchange Act prohibits a person from making "any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n. In addition to meeting the Rule 9(b) heightened pleadings requirements, under the PSLRA plaintiff must plead particular facts showing falsity and scienter. *See, e.g., Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1167 (9th Cir. 2009) ("the analysis of Rubke's section 14(e) claims is identical to that of her section 10(b) claims with regard to falsity").

**A.   Falsity**

Plaintiff's opposition clarifies that the claim under 14(e) is based on omission of critical internal financial measures and forecasts in general and information regarding the success of the EPIC tablet specifically that made the dire financial predictions contained in the Recommendation Statement misleading. Plaintiff argues that EPIC was a centerpiece of the company's hopes for a turnaround and it was – as hoped for – successful during the 2015 holiday season. Yet, mention of EPIC and details about its forecasted sales were omitted from the Recommendation Statement. Plaintiff argues that this posture – omission of information that defendants admittedly knew from the merger Recommendation – distinguishes this case from those relied on by defendants that concern insufficient allegations that defendants knew the true state of facts they were alleged to have omitted or "fraud-by-hindsight." *See, e.g., In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir. 1999), *as amended* (Aug. 4, 1999). According to plaintiff, defendants' own public filings and attempts to enforce its EPIC trademark in at least one lawsuit show how important EPIC was to defendants. Its omission from the Recommendation Statement, when

4

defendants focused on failing products, is the problem here.[3]

Defendants respond that the omission alleged cannot be actionable for the primary reason that the status of the EPIC tablet's launch and sales were disclosed just three weeks earlier in its 10-Q, so it was not hiding anything and investors could make up their minds with full information. Defendants also point out that the Recommendation Statement itself referred investors to the 10-Q, and that 10-Q stated that "declines in the overall table market overshadowed improvements in certain product lines such as the Company's new Epic tablet." 3rd Quarter 10-Q at 9; *cf. Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1162–63 (9th Cir. 2009) (affirming dismissal of Section 11 claim in connection with a registration statement because allegedly omitted information "was publicly available" and recognizing it is "pointless and costly to compel firms to reprint information already in the public domain." (internal quotation omitted)).

Most critically, defendants point out that plaintiff is required to identify what exactly in the Recommendation Statement was rendered misleading by the failure to discuss the EPIC tablet, which plaintiff fails to do. *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("In order to survive a motion to dismiss under the heightened pleading standards of the Private Securities Litigation Reform Act ('PSLRA'), the plaintiffs' complaint must specify the reason or reasons why the statements made by [defendant] were misleading.").[4] As the Ninth Circuit explained in *Brody*, "Section 14(e) in terms prohibit[s] only misleading and untrue statements, not statements that are incomplete." *Id*. at 1006. And "[t]o be actionable under the securities laws, an omission must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists" *Id*.

---

[3] Plaintiff argues it is unnecessary to determine whether LeapFrog had a duty to disclose any financial metrics pertaining to EPIC in the Statement, but instead it was the company's focus on its failing product (LeapTV) that imposed the duty on LeapFrog to discuss the successful product (EPIC).

[4] Plaintiff makes a half-hearted attempt to argue that because the Ninth Circuit in *Brody* was applying the requirements of a Section 10b-5 claim as well as a Section 14(e) claim with respect to those provisions' prohibition against "the making of untrue or misleading statements," the Ninth Circuit somehow inadvertently adopted the Section 10b-5 requirements for claims sounding in fraud to the Section 14(e) claim. The *Brody* court explicitly and repeatedly referred to Section 14(e) and I am bound to follow that court's conclusion as to what must be pleaded for a Section 14(e) claim based on untrue or misleading statements, like the one alleged here.

There are two problems with plaintiff's Amended Complaint. First, plaintiff does not identify with specificity the statements in the Recommendation that were rendered misleading by the failure to include information regarding the EPIC tablet. At most, in his opposition, he refers to paragraphs 92 and 97 of his Amended Complaint where five general statements are identified, but there is no "connection" showing how each of those statements was made misleading by the failure to disclose the EPIC results. Second, plaintiff fails to allege facts supporting his assertion that the allegedly omitted information regarding the EPIC tablet could have undermined any of those statements: e.g., facts that the success of EPIC in the 2015 holiday season *meant* that the company was not in dire financial straits, or was not facing severe underperformance based on its operating plan, or was not facing a severe liquidity situation. *See Brody,* 280 F.3d at 1006 ("the plaintiffs' complaint must specify the reason or reasons why the statements made by THC were misleading or untrue, not simply why the statements were incomplete."). The Amended Complaint does not allege facts showing that any particular statement was rendered materially misleading because the omission of EPIC's success hid that LeapFrog's financial condition was not as dire as described in the Recommendation Statement. *See also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014) ("Nothing about the statements in the 2007 Annual Report would give a reasonable investor the impression that Intuitive's growth was different than it was in reality. The statements accurately reflect the company's growth in 2007; they do not purport to speak to any trends in Intuitive's growth or revenues and do not alter the total mix of information available to investors.").

Plaintiff responds that because LeapFrog took it upon itself to discuss failing products in the Recommendation Statement (referring to LeapTV at least six times by name), then it was required to discuss EPIC as a successful product. As support for this position, plaintiff relies on cases where defendants touted the success of a product line, but failed to disclose material information regarding problems with the same. *See, e.g., Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 701-02, 708 (9th Cir. 2016); *Kyrstek v. Ruby Tuesday, Inc.*, No. 3:14-CV-01119, 2016 WL 1274447, *7-8 (M.D. Tenn. Mar. 31, 2016) (by touting success of company's casual dining outlet, company was required to disclose adverse information regarding same outlet). Those cases

1  are factually inapposite in as much as Manger fails to allege facts showing why omission of
2  information regarding EPIC from its Recommendation conveyed a false reality about LeapFrog's
3  financial condition represented in the Recommendation.[5]

### B. 14(e) and Scienter

#### 1. Scienter Requirement

Plaintiff argues that his 14(e) claim is governed by the lower negligence standard as opposed to the higher scienter standard, and as such allegations regarding scienter are not required. Both sides agree that the Second, Third, and Fifth Circuits expressly require scienter for 14(e) claims. Defendants point out that the Sixth and Eleventh Circuits have also expressly required scienter for 14(e) claims, and the Seventh assumed that standard applied. *See* cases cited in Reply at 7 & n.4. And although the Ninth Circuit has yet to address the issue, at least four judges in *this* District have concluded that scienter is required for claims under Section 14(e). *See Russian Hill Capital, LP v. Energy Corp. of Am.*, No. 15-CV-02554-HSG, 2016 WL 1029541, at *8 (N.D. Cal. Mar. 15, 2016); *Biotechnology Value Fund, L.P. v. Celera Corp.*, No. 13-cv-03248-WHA, 12 F. Supp. 3d 1194, 1199 (N.D. Cal. 2013); *Dixon v. Cost Plus*, No. 12-CV-02721-LHK, 2012 WL 2499931, at *6 (N.D. Cal. June 27, 2012); *Rubke v. Capitol Bancorp Ltd.*, No. 05-cv-4800-PJH, 460 F. Supp. 2d 1124, 1150 (N.D. Cal. 2006), *aff'd sub nom. Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156 (9th Cir. 2009); *see also Varjabedian v. Emulex Corp.*, 152 F. Supp. 3d 1226, 1233 (C.D. Cal. 2016) (requiring scienter and noting that "no federal court has held that § 14(e) requires only a showing of negligence.").[6]

While plaintiff makes interesting textual and legislative history arguments, he identifies no

---

[5] Plaintiff's focus on LeapTV misses the point. Plaintiff's claim is not that LeapFrog represented that LeapTV was failing and significantly contributing to the failing finances of LeapFrog when it was not. A different situation would be presented if LeapFrog had undisclosed information that LeapTV was actually performing better than represented. Relatedly, if plaintiff has facts that the success of the EPIC tablets outweighed the failures of LeapTV and the company's otherwise declining market share and prospects, those facts are the type that could show LeapFrog created an impression that differed in a material way from reality.

[6] Plaintiff argues I should not rely on *Varjabedian v. Emulex Corp.*, 152 F. Supp. 3d 1226 (C.D. Cal. 2016) because the case is on appeal to the Ninth Circuit.

7

case applying the negligence standard to Section 14(e) claims.  Scienter applies to Manger's 14(e) claim.

### 2. Scienter Allegations

Even if scienter is required, plaintiff argues that he has sufficiently alleged it here based on defendants "conscious disregard or recklessness" in failing to disclose the *known* information about the company's financial prospects in the Recommendation Statement, specifically the forecasts for the EPIC tablet.  Presumably, under plaintiff's theory, those forecasts were contradictory to the dire reports of the company's financial condition and material to the company's true financial strength.[7]   However, facts regarding that very issue – that the EPIC financials contradicted the financial predictions contained in the Recommendation Statement – are exactly what *is missing* from the Amendment Complaint.

There are no facts currently alleged that support plaintiff's theory that the forecasts for EPIC were material *because* those forecasts (if disclosed) would have made the dire statements regarding the company's financial condition misleading and/or false.  Unless there are facts to be alleged showing that the omitted EPIC tablet information materially contradicted the disclosed statements or were otherwise "critically adverse" to the disclosed information, plaintiffs cannot adequately alleged scienter.  *See, e.g.*, *In re Amgen Inc. Sec. Litig.*, No. CV 07-2536 PSG (PLAx), 2014 U.S. Dist. LEXIS 183034, at *30 (C.D. Cal. Aug. 4, 2014)  ("Where a strong inference suggests that a defendant was on notice of clinical findings before making contradictory public statements, the defendant's conduct is at least 'deliberately reckless' under Section 10(b)."); *Schlagal v. Learning Tree Int'l*, 1998 U.S. Dist. LEXIS 20306, *54 (where plaintiffs alleged that defendants "had knowledge of the critical adverse information" scienter adequately alleged); *see also Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2007 U.S. Dist. LEXIS 31287, at *37 (N.D. Cal. Apr. 17, 2007) (strong inference of scienter where "the secret program was not fairly disclosed in the prospectus").

---

[7] To satisfy the scienter requirement, plaintiff must state facts with particularity that give rise to a "strong inference" that defendants made false or misleading statements either intentionally or with deliberate recklessness. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009), *as amended* (Feb. 10, 2009).

With respect to the individual defendants, in the Ninth Circuit plaintiffs are required to "allege scienter with respect to each of the individual defendants." *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc*., 774 F.3d 598, 607 (9th Cir. 2014). However, scienter can be imputed to individual defendants where a company's public statements are "so important" and "so dramatically false" that "they would create a strong inference that at least some corporate officials knew of the falsity upon publication." *Id*. at 607-08. Here, there are neither scienter allegations with respect to each individual defendant nor facts alleged that the Recommendation Statement was "so dramatically false" concerning the company's financial situation that scienter can be inferred for the individual defendants.

The most plaintiff alleges is that the individual defendants were motivated to consummate the "fire sale" merger because they were "driven in part to preserve equity compensation awards" that would occur in a change-of-control transaction (like the VTech merger) but would not continue if an asset sale or liquidation occurred. AC ¶ 122. Defendants respond that plaintiff's theory regarding the individual defendants fails to consider that those same defendants had equity shares that would be cashed out for the allegedly deflated Tender Offer. AC ¶ 122. Under plaintiff's theory, these very shares would be worth more had the individual defendants not pushed the Merger at its allegedly deflated price. *See, e.g., In re Digital Island Sec. Litig*., 357 F.3d 322, 331 (3d Cir. 2004) ("plaintiffs' theory makes little economic sense because the directors' own stock options would have been devalued if they tried to sell the company for less than full price."). There are no facts alleged to suggest that the other allegedly inadequately considered alternatives – asset sale or liquidation – would have resulted in a *higher* per share price for shareholders than the Merger provided. In any event, even if plausible, the change-of-control allegations are insufficient by themselves to make a strong inference of scienter. *See, e.g., Biotechnology Value Fund, L.P. v. Celera Corp*., 12 F. Supp. 3d 1194, 1203 (N.D. Cal. 2013) (allegation that directors stood to benefit from change-of-control provision might support "reasonable inference of intent, they are not sufficient to establish a strong inference of deliberate recklessness.") (internal quotation omitted)).

### C. Loss Causation

Defendants also argue plaintiff has failed to adequately allege loss causation. Loss causation requires a showing that the defendant caused the loss for which the plaintiff seeks to recover damage, and plaintiff must prove both economic loss and proximate causation. *N.Y. City Employees' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1023 (9th Cir. 2010), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012).

Plaintiff relies on the measurable damages of the Board's rejection of the MGA proposal that would have paid stockholders 10 cents more per share. AC ¶¶ 119-123; Oppo. at 3. Defendants point out that plaintiff fails to allege facts explaining how non-disclosure of the EPIC tablet's performance in the Recommendation Statement led to the rejection of the MGA offer, much less plaintiff's loss of 10 cents a share.

Plaintiff's current allegations regarding the falsity of the Recommendation Statement, scienter and loss causation are insufficient, and the Section 14(e) claim is dismissed with leave to amend. Plaintiff's Section 20(a) claim is derivative of his other claims and is also dismissed with leave to amend.

## II. 14(D)(4) AND RULE 14D-9

Under 14(d)(4) and Rule 14d-9 (and their implementing regulations) solicitations or recommendations must furnish information "as necessary to make the required statements, in light of the circumstances under which they are made, not misleading." 17 C.F.R. § 229.1011(c). Defendants argue that there is no private right of action under Section 14(d)(4) or the rule, and point out that no federal court case has found otherwise. Plaintiff relies only on three cases from Delaware, two of which assumed a private right of action existed in denying motions for a preliminary injunction, and a third state court decision which did not address 14(d). Oppo. at 16.[8]

Three cases from this District *have* addressed the issue on the merits and concluded

---

[8] *Revlon, Inc. v. Pantry Pride, Inc.*, 621 F. Supp. 804 (D. Del. 1985) (denying motion for preliminary injunction); *Gulf Corp. v. Mesa Petroleum Co.*, 582 F. Supp. 1110, 1119 (D. Del. 1984) (same); *Weinberger v. Rio Grande Indus., Inc.*, 519 A.2d 116, 125 (Del. Ch. 1986) (addressing scope of Schedule 14D-9 disclosure required under state law duty of disclosure claim).

Section 14(d) does not provide a private right of action. *See Dixon v. Cost Plus*, No. 12-CV-02721-LHK, 2012 WL 2499931, at *6 n. 2 (N.D. Cal. June 27, 2012); *McCreary v. Celera Corp.*, No. 11-1618 SC, 2011 WL 1399263, at *3 (N.D. Cal. Apr. 13, 2011); *Erickson v. Wheatley Ventures*, No. C-96 2934 MHP, 1997 WL 119849, at *5 (N.D. Cal. Mar. 4, 1997). Plaintiff argues that *Dixon* and *McCreary* did not analyze the particular text of 14(d) or its legislative history and instead relied solely on *Erickson*. Plaintiff criticizes the analysis in *Erickson*, arguing that the court misapplied the test for determining whether a private right of action exists as set out by the Supreme Court in *Cort v. Ash*, 422 U.S. 66 (1975). Oppo. at 17-18. But more recently, the district court in *Varjabedian v. Emulex Corp.*, 152 F. Supp. 3d 1226 (C.D. Cal. 2016) conducted that exact analysis under *Cort v. Ash* and agreed with the opinions from this District that no private right of action exists under 14(d). While the *Varjabedian* decision is on appeal to the Ninth Circuit, I find its in-depth analysis persuasive and conclude, consistent with the other decisions from this District, that there is no private right of action under Section 14(d).

## CONCLUSION

Plaintiff's Section 14(d) claim is DISMISSED with prejudice. Plaintiff's Section 14(e) and Section 20(a) claims are DISMISSED with leave to amend. If plaintiff believes he can amend to cure the deficiencies identified, he must file his Second Amended Complaint within twenty one (21) days of the date of this Order. If he does not file a Second Amended Complaint by that date, this case will be dismissed with prejudice.

**IT IS SO ORDERED**.

Dated: January 23, 2017

WILLIAM H. ORRICK
United States District Judge